B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>William Wayne Brothers | DEFENDANTS<br>John M. Maddox<br>Janet E. Maddox |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br><br>FILED 16 JUN 07 PM 01:49 USBC-TNC | ATTORNEYS (If Known)<br>Randall E. Self |
| PARTY (Check One Box Only)<br>☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor    ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☒ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

See Attached

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☒ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☒ Check if a jury trial is demanded in complaint | Demand $ 392,530 |
| Other Relief Sought | |

## BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR | BANKRUPTCY CASE NO. |
|---|---|
| John M. Maddox & Janet L. Maddox | 4:15-BK-10722-SDR |

| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
|---|---|---|
| Eastern | | Shelley D. Rucker |

## RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| | | |

| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
|---|---|---|
| | | |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
|---|
| William Wayne Brothers    Plaintiff |

| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) |
|---|---|
| 6-7-2016 | WAYNE Brothers (Plaintiff) |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE

IN RE:      John M. Maddox & Janet E. Maddox      4:15-BK-10722-SDR
            Debtors                            CHAPTER 7


**William Wayne Brothers (d/b/a L & W Motors)**      PLAINTIFF
**Chapter 7 Creditor**

v.

**John M. Maddox**                           DEFENDANTS
**Janet E. Maddox**


## INTRODUCTION

1. Now before the Court is the *Complaint To Revoke Discharge of the Debtor* (the "Complaint") filed pro se by William Wayne Brothers (d/b/a L & W Motors) as Creditor, pursuant to 11 U.S.C. § 727(d). On June 8, 2015 this Court granted Debtors a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code). This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(a). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(J). The filing is timely pursuant to 11 U.S.C. § 727(e)(1).


## FACTS

2. On February 20, 2015, John M. Maddox, jointly with wife, ("**Debtors**"), filed a voluntary petition (Case 4:15-bk-10722-SDR, in the U.S. Bankruptcy Court Eastern District of Tennessee) under Chapter 7 of Title 11 of the United States Code (the Bankruptcy Code). On June 8, 2015, the Debtors were granted discharge under section 727 of title 11, United

States Code (the Bankruptcy Code). Plaintiff/Brothers was listed as a Creditor in the filing.

3. After entry of the Debtor's discharge, on June 24, 2015, through the ongoing criminal investigation conducted by the Alabama Marshall County District Attorney's Office, which began on February 24, 2015 (see Alabama Uniform Incident/Offense Report, **Exhibit 1**), it became apparent that through multiple fraudulent schemes (see Investigator Karl A. Anderson's Alabama Uniform Incident/Offense Report of June 24, 2015, **Exhibit 2**) Defendant had in fact stolen approximately $400,000 from Plaintiff (the amount as listed in Defendant's Bankruptcy filing as debt to Plaintiff) yet characterized the amount as business debt to be discharged through his bankruptcy filing.

4. Thereafter, in August, 2015, through further investigation by the District Attorney's Office, "ADESA" auction company records (a listed Creditor) disclosed that Maddox never owned certain vehicles for which, through deceit, he collected monies from Brothers; monies included in his debt to Brothers in his bankruptcy filing. Maddox had secured the winning bids on four vehicles and been given ADESA Sales Contracts for the cars (see **Exhibit 3**), which he presented to Plaintiff as evidence that he owned the cars, yet in fact he never actually purchased the cars from the ADESA auction company. He simply did not report to the ADESA business office to complete the transaction paperwork for the vehicles bid upon, or make any attempt to take delivery of the vehicles in anyway.

5. In October, 2015, through Maddox bank records, the District Attorney's Office further discovered that he had made well over one million ($1,000,000) in payments to Creditors during the 90 days prior to the Bankruptcy filing. In his filing, Maddox states that he

made no payments to Creditors during the 90 days prior to his filing for bankruptcy. Maddox also states in his filing that his debts were primarily personal; in fact they were primarily business.

6. To further their investigation, the Marshall County District Attorney contacted the Alabama Bureau of Investigation (ABI). In November, 2015, Plaintiff met with ABI Agent Billy Pruitt. To date, it is Plaintiff's understanding that Agent Pruitt has interviewed Maddox and others and that he will be filing his report imminently and indictment proceeding will begin.

7. On June 22, 2015, Steve Marshall, Marshall County District Attorney, advised Mr. Terry Gregory (Bankruptcy Trustee in this matter) of the ongoing criminal investigation (see **Exhibit 4**). In October, 2015, the Marshall County District Attorney's office provided Mr. Gregory with Maddox's banking information and ADESA documents. Mr. Gregory advised Plaintiff that he would take no action in the matter.

8. These findings, the District Attorney's and ABI's ongoing investigation and Mr. Gregory's refusal to take action have lead to the filing of this Complaint.

9. The fraudulent schemes identified in Investigator Anderson's report of June 24, 2015 were in the context of business transactions between Plaintiff and Defendant. Brothers and Maddox owned separate and distinct motor vehicle wholesale businesses wherein they bought and sold automobiles at auction. Brothers' business, L & W Motors, was (and remains) located at 218 Bob Jones Rd., Scottsboro, AL 35769. His Alabama Automobile Dealer License Number is: 663. Maddox's business, JM Wholesale, was at 101 North Carlisle Street, Suite 103, Albertville, AL, 35950. His Alabama Motor Vehicle Wholesaler, Regulatory License number is: 50-05029-15.

10. The parties began doing business together in November 2008. L & W Motors bought cars from JM Wholesale; typically to be resold at auction within one (1) to two (2) weeks. Brothers began buying cars from Maddox (rather than buying and selling the cars himself as he had done for over 35 years) because Brothers was not up to the rigors of the business on a daily basis. Brothers is 78 years old and semiretired.

11. Initially, Brothers was only buying a few cars from Maddox a week, but over the past several years Brothers estimates that he bought on average seven to eight cars a week; 1000 over the entire period. Maddox handled both the buying and selling of the cars. Maddox would typically buy cars at auction on Wednesdays; most often at ADESA auction house. Maddox would then typically resell the cars within a week or two, most often on Thursdays at "Manheim" auction house. Brothers would often attend the auctions on Thursdays, the day cars were sold. They would meet on Fridays to "settle-up." Brothers would buy the cars Maddox had bought during the week, and Brothers would be paid by Maddox for the cars that had been sold by Maddox that week. On Friday's, Maddox would provide Brothers with the Sale Contract for each car he had purchased that week. The contracts contained the information Plaintiff needed to identify the car he was buying: the date, purchase price, the car's year, make, model, color, mileage and VIN number. Brothers would enter the information into his log book and then write Maddox a check for the full amount for each car, noting the year, model and VIN number (last 4 digits) on the check; the amount Brothers paid and his check number would be entered in his log book as well. As for cars sold that week, Maddox would write Brothers a check for the amount Brothers had paid him for the car plus $200. Brothers would enter the transaction (check) amount and JM Wholesale check number in

his log book. Because the cars were resold within a very short period of time (typically one (1) – two (2) weeks) the parties did not transfer title into Brothers name. Transaction details relating to each car at issue are set forth in "Transactions between Wayne Brothers (d/b/a L and W Motors) and John Maddox (d/b/a JM Wholesale)." (**See Exhibit 5.**) Between December 5, 2014 and February 5, 2015 Brothers purchased twenty-one (21) cars from Maddox; writing individual checks totaling **$377,610**. All checks were deposited into Maddox's JM Wholesale account at Vantage Bank and cleared Brothers' L & W Motors accounts. Plaintiff has one account at First Bank of Boaz and one at Wells Fargo.

12. On Thursday, February 5, 2015, Brothers and Maddox attended an auction together at ADESA in Fairburn, GA. Nine (9) cars from Brothers inventory were sold that day. On Brothers way home after the auction, Maddox called and asked that they "settle-up" for the week later that day; explaining that he had other matters to take care of on Friday. Brothers agreed and they met at Maddox's office at 4:00pm.

13. They first handled the cars sold earlier that day. As Brothers had attended the sale auction (which he typically did), he had his own records regarding the nine (9) cars that had been sold. Maddox presented Brothers with nine (9) checks totaling **$148,565**; on each check noting the car year, make and model.

14. Maddox then presented Brothers with four (4) ADESA Sale Contracts (see **Exhibit 3**), telling Brothers that that he had bought the cars on Wednesday, February 4, 2015: Buick Lacross, Chevrolet Silverado, Dodge Challenger and Dodge Charger. As per Brothers' routine, he wrote down the information from the contracts regarding each car in his log book: date, purchase price, the car's year, make, model, color, mileage and VIN number.

He then wrote Maddox four checks (**totaling $79,825**), one for each car he was buying. As always, on each check he wrote the year, make and/or model and VIN number (last 4 digits).

15. Later that day, Maddox deposited Brothers four (4) checks.

16. Brothers deposited eight (8) of Maddox's checks on Monday, February 9, 2015. On February 11 all checks were returned insufficient funds. (Brothers had overlooked one, which, after the others were returned, he did not deposit promptly as he knew it would be returned. It was Ck# 13465 written for $22,050. However, he did deposit it on March 16; it was returned insufficient funds.) Brothers called Maddox repeatedly but he did not answer his phone. He left messages that the checks had been returned. The checks were run through Brothers bank again. On February 17, 2015 all checks were returned for a second time marked insufficient funds.

17. On February 24, 2015 Brothers went to the Alabama Marshall County Sheriff's office and filed an "Alabama Uniform Incident/Offense Report" regarding the returned checks. (See **Exhibit 1**.)

## ANALYSIS

18. The Plaintiff/Creditor (Brothers) seeks revocation of the Defendant/Debtor's (Maddox) discharge pursuant to 11 U.S.C. § 727(d)(1). Section 727(d)(1) of the Bankruptcy Code provides that, "On request of the trustee, a creditor or the United States trustee, and after notice and a hearing, the Court shall revoke a discharge granted under [section 727(a)] if . . . [i] such discharge was obtained through the fraud of the debtor, and [ii] the requesting party did not know of such fraud until after the granting of such discharge".

19. In the instant case, Defendant's bankruptcy filing fraudulently listed Plaintiff as a Creditor. In fact, through schemes of deception, Defendant had stolen **$392,530** (**$148,565.00** in bad checks and **$243,965.00** in three additional schemes) from Plaintiff and listed the stolen money as business debt. The filing actually lists the debt as **$400,000**.

20. The schemes (as set forth in Investigator Anderson's June 24, 2015 report - see **Exhibit 2**), took place between December 15, 2014 and February 5, 2015. While unaware of Maddox's multiple schemes of deception at the time, Brothers filed an incident/offense report with the Alabama Marshall County Sheriff's Office on February 24, 2015 regarding nine (9) checks written by Maddox to Brothers on February 4, 2015 (see **Exhibit 5**). The checks had been returned to Brothers marked insufficient funds.

21. Based on the District Attorney's investigation to date, it is believed that 1) Defendant knew that the nine checks he issued in the aggregate amount of **$148,565** to Plaintiff on February 5, 2015 were bad checks; 2) Defendant, based on their customary arrangement and practice, took payments between December 5, 2014 and January 30, 2015 from Plaintiff for five vehicles in the amount of **$102,920.** Defendant then sold the vehicles without Plaintiff's knowledge, and made no attempt to compensate the victim in the historical manner; 3) Defendant, based on their customary arrangement and practice, took payments between January 19, 2015 and January 30, 2015 from Plaintiff for four vehicles in the amount of **$61,220**, yet in fact he did not own the vehicles, the vehicles were owned by AFC finance. The vehicles are listed as personal "assets" in Defendant's bankruptcy filing and AFC is listed as the finance company. (It is believed that one of one of these cars was actually repossessed by AFC after Maddox's Bankruptcy filing.); 4)

Defendant, based on their customary arrangement, took payments on February 5, 2015 from Plaintiff for four vehicles in the amount of **$79,825**, yet Defendant never owned or took possession of the cars. He had secured the winning bids on the four vehicles and been given ADESA Sales Contracts for the cars (see **Exhibit 3**), which he presented to Plaintiff as evidence that he owned the cars, yet in fact he never actually purchased the cars from the ADESA auction company. He simply did not report to the ADESA business office to complete the transaction paperwork for the vehicles bid upon, or make any attempt to take delivery of the vehicles in anyway. All the above amounts are the debts Maddox lists as owing to Brothers in his Bankruptcy filing.

22. Maddox also makes fraudulent statements in his bankruptcy filing. He states in his filing that he had paid no creditors during the 90 days prior to his filing for bankruptcy. Through Maddox bank records, in October 2015 the Marshall County District Attorney's office discovered that well over $1,000,000 had been paid to creditors.

23. On June 22, 2015, Steve Marshall, Marshall County District Attorney, advised Mr. Terry Gregory (Bankruptcy Trustee in this matter) of the ongoing criminal investigation (see **Exhibit 4**). In October, 2015, the Marshall County District Attorney's office provided Mr. Gregory with Maddox's banking information and ADESA documents. Mr. Gregory has advised Plaintiff that he would take no action in the matter.

24. The investigation by the Marshall County District Attorney remains ongoing. They have called upon the Alabama Bureau of Investigation (ABI) to assist. In November, 2015, Plaintiff met with ABI Agent Billy Pruitt. To date, it is Plaintiff's understanding that Agent Pruitt has interviewed Maddox and others and that he will be filing his report imminently and indictment proceeding will begin shortly after his report is filed.

## CONCLUSION

25. For the reasons stated herein, the Debtor's discharge under § 727(a) should be revoked and a complete audit of the filing should be conducted.


Plaintiff, *William Wayne Brothers*


William Wayne Brothers [Pro Se]
218 Bob Jones Rd.
Scottsboro, AL 35769

IN RE: John Maddox & Janet E. Maddox
Debtors

4:15-BK-10722-SDR

William Wayne Brothers (d/b/a L&W Motors)
v.

John M. Maddox & Janet E. Maddox

Plaintiff

Defendants

## Cause of Action

1. The Plaintiff seeks revocation of the Defendant's discharge pursuant to 11 U.S.C. § 727(d)(1). Section 727(d)(1) of the Bankruptcy Code provides that, "On request of the trustee, a creditor or the United States trustee, and after notice and a hearing, the Court shall revoke a discharge granted under [section 727(a)] if . . . [i] such discharge was obtained through the fraud of the debtor, and [ii] the requesting party did not know of such fraud until after the granting of such discharge".

2. Defendant's bankruptcy filing fraudulently listed Plaintiff as a Creditor. In fact, through multiple schemes of deception, Defendant had stolen **$392,530** (**$148,565.00** in bad checks and **$243,965.00** in three additional schemes) from Plaintiff and listed the stolen money as business debt. (The filing actually lists the debt as **$400,000.**)

3. While unaware of Maddox's multiple schemes of deception at the time, Brothers filed an incident/offense report with the Alabama Marshall County Sheriff's Office on February 24, 2015 regarding nine (9) checks written by Maddox to Brothers on February 4, 2015. The checks had been returned to Brothers marked insufficient funds.

4. Based on the review of all the facts on June 22, 2015 with the Alabama Marshall County District Attorney, Steve Marshall, and Investigator, Karl Anderson, of the Alabama Marshall County Sheriff's Office, it was assessed that 1) Defendant knew at the time (February 5, 2015) he issued the nine (9) checks to Plaintiff (in the aggregate amount of

$148,565) that they were bad checks; 2) Defendant, based on their customary arrangement and practice, took payments between December 5, 2014 and January 30, 2015 from Plaintiff for five vehicles in the amount of $102,920. Defendant then sold the vehicles without Plaintiff's knowledge, and made no attempt to compensate the victim in the historical manner; 3) Defendant, based on their customary arrangement and practice, took payments between January 19, 2015 and January 30, 2015 from Plaintiff for four vehicles in the amount of $61,220, yet in fact he did not own the vehicles, the vehicles were owned by AFC finance. The vehicles are listed as personal "assets" in Defendant's bankruptcy filing and AFC is listed as the finance company. 4) Defendant, based on their customary arrangement, took payments on February 5, 2015 from Plaintiff for four vehicles in the amount of $79,825, yet Defendant never owned or took possession of the cars. He had secured the winning bids on the four vehicles and been given ADESA Sales Contracts for the cars, which he presented to Plaintiff as evidence that he owned the cars, yet in fact he never actually purchased the cars from the ADESA auction company. He simply did not report to the ADESA business office to complete the transaction paperwork for the vehicles bid upon, or make any attempt to take delivery of the vehicles in anyway. In August, 2015, through the further investigation by the District Attorney's Office, "ADESA" auction company records (a listed Creditor) confirmed that Maddox never owned the vehicles for which, through deceit, he collected monies from Brothers.

5. In aggregate, the above amounts are the debts ($400,000) Maddox lists as owing to Brothers in his Bankruptcy filing.

6. In October, 2015, through Maddox bank records, the District Attorney's Office further discovered that Maddox had made well over one million ($1,000,000) in payments to

Creditors during the 90 days prior to the Bankruptcy filing. In his filing, Maddox states that he made no payments to Creditors during the 90 days prior to his filing for bankruptcy. Maddox also states in his filing that his debts were primarily personal; in fact they were primarily business.

7. To further their investigation, the Marshall County District Attorney contacted the Alabama Bureau of Investigation (ABI). In November, 2015, Plaintiff met with ABI Agent Billy Pruitt. To date, it is Plaintiff's understanding that Agent Pruitt has interviewed Maddox and others and that he will be filing his report imminently and indictment proceeding will begin on the fraudulent activities listed above.