

**SIGNED this 20th day of July, 2017**

/s/ Shelley D. Rucker
**Shelley D. Rucker**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TENNESSEE**
**SOUTHERN DIVISION**

In re:

| | |
|---|---|
| JOHN M. MADDOX | No. 4:15-bk-10722-SDR |
| JANET E. MADDOX | Chapter 7 |
|     Debtors; | |
| | |
| WILLIAM WAYNE BROTHERS, | |
|     Plaintiff, | |
| | |
| v. | |
| | |
| JOHN M. MADDOX | Adversary Proceeding |
| JANET E. MADDOX, | No. 4:16-ap-1023-SDR |
|     Defendants. | |

**MEMORANDUM**

On February 20, 2015, John and Janet Maddox ("Defendants" or "Debtors") filed a Chapter 7 bankruptcy. On June 8, 2015, they received a discharge. On June 7, 2016, Creditor

1

William Brothers ("Plaintiff") commenced this action to revoke the Debtors' discharge as to all creditors pursuant to 11 U.S.C. § 727(d)(1).

On March 14, 2017, Defendants filed a motion for summary judgment. Plaintiff responded with his own motion for summary judgment. The court heard argument on the motions on July 10, 2017. For the following reasons, the court will DENY Plaintiff's motion for summary judgment and will GRANT Defendants' motion.

## I. Jurisdiction

28 U.S.C. §§ 157 and 1334, as well as the general order of reference entered by the district court, provide this court with jurisdiction to hear and determine this adversary proceeding. Plaintiff's action regarding the revocation of the discharge is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(J).

## II. Statement of Material Facts

On a motion for summary judgment, the nonmoving party is entitled to have the facts viewed in the light most favorable to him. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In this case, both parties have filed motions for summary judgment. These are the facts as to which there is no genuine issue of fact.

Plaintiff and Mr. Maddox began doing business together in November, 2008. [Doc. No. 38, *Defendant's Statement of Material Facts as to Which No Genuine Issue Exists to be Tried in Support of Motion for Summary Judgment* ¶ 11 (hereinafter "Defendant's Statement of Facts").] Plaintiff, doing business as L & W Motors, bought cars through Mr. Maddox, doing business as JM Wholesale. [*Id.*] Mr. Maddox would purchase vehicles at auction, then at the end of the week Plaintiff would pay Mr. Maddox for those purchases. [*Id.* at ¶ 13.] Sometimes, Mr. Maddox would sell vehicles for Plaintiff and then pay Plaintiff from the sale proceeds. [*Id.*]

During the weeks preceding the bankruptcy, Mr. Maddox wrote Plaintiff four checks for four cars he had ostensibly purchased at auction. The $78,000 in checks were returned to Plaintiff for insufficient funds prior to the bankruptcy filing. In addition, Defendant sold Plaintiff's vehicles without paying Plaintiff; granted security interests to a third party in vehicles that he had bought for Plaintiff and had already been paid for; and accepted payment from Plaintiff for vehicles that he did not purchase. [Doc. No. 53, *Plaintiff's Statement of Material Facts as to Which No Genuine Issue Exists to be Tried in Support For Summary Judgment* ¶¶ 1, 4, & 11 (hereinafter "Plaintiff's Statement of Facts").] Through these methods Mr. Maddox came to owe Plaintiff $392,530. [Doc. No. 11, *Response to Order for a More Definite Statement, Amended Complaint* ¶ 19 (hereinafter "Amended Complaint").]

On February 17, 2015, Plaintiff sent Mr. Maddox a letter demanding payment on the bad checks. [Plaintiff's Statement of Facts ¶ 4.]

Defendants filed for Chapter 7 bankruptcy on February 20, 2015. [Defendant's Statement of Facts ¶ 1.] Plaintiff was listed as a creditor in that case. [*Id.* at ¶ 3.]

On February 24, 2015, Plaintiff filed an Alabama Uniform Incident/Offense Report with the Alabama Marshall County Sheriff related to the bad checks. [*Id.*] Plaintiff received a letter from Mitchell Howie, attorney for Mr. Maddox, on February 24, 2015 which informed Plaintiff of the Defendants' bankruptcy filing. [Defendant's Statement of Facts ¶ 6.] The letter also stated that the bad checks were not written with the intent to defraud Plaintiff, that the funds which had been deposited to cover the checks had been seized by another creditor. [*Id.*] Plaintiff contends he relied on the letter as evidence that there was no intent to defraud him, and he did not realize he had been defrauded until he received word from the prosecutor's office of Marshall County, Alabama that its investigator believed that fraud had been committed. Plaintiff contends that up

3

until that time he believed that there were no assets available to him because everything had been seized by another creditor. The investigator for the Marshall County District Attorney's office disclosed that some of his funds had been misused rather than seized. [Plaintiff's Statement of Facts ¶¶ 9-11.] Plaintiff saw the investigator's supplement with these findings on June 24, 2015. [*Id*.] This was approximately two weeks after the discharge had been entered.

Defendants made 237 alleged preferential payments for a total of $2.8 million in the 90 days prior to filing their bankruptcy. [Doc. No. 54-2, p. 19 (hereinafter "Exhibit 10").] Of those payments, 69 were to Plaintiff's business. [*Id.*] Those payments totaled $1.3 million. [*Id.*] Defendants do not dispute that those payments were made during that period. [Doc. No. 63 at 5.] On their bankruptcy schedules, Defendants stated that no payments of more than $600 were made to creditors on consumer debts and no payments of more than $6,255 were made on business debts during the 90 days prior to filing bankruptcy. [*Defendant's Statement of Facts* at ¶ 12.]

Defendants received their discharge on June 8, 2015. [*Id.* at ¶ 8.] At no time prior to June 8, 2015 did Plaintiff file any objection to Defendants' receiving their discharge or an objection to the discharge of the debts owed to him. He did not seek an extension of the time to do either.

On June 7, 2016, Plaintiff commenced this action to revoke the Debtors' discharge as to all creditors pursuant to 11 U.S.C. § 727(d)(1). The action was timely filed pursuant to § 727(e)(1). Plaintiff alleges that Defendants committed fraud in obtaining their discharge by defrauding the Plaintiff and making false statements on their bankruptcy petition and schedules. [*Amended Complaint* ¶ 20-22.]

4

### III. Analysis

A. Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Kava v. Peters*, No. 09-2327, 2011 WL 6091350, at *3 (6th Cir. Dec. 7, 2011).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986); *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

B. Elements of Section 727(d)(1)

A proceeding to revoke a discharge must be initiated by filing an adversary complaint. Fed. R. Bankr. P. 7001(4). The party seeking revocation bears the burden of proof by a preponderance of the evidence. *Buckeye Retirement Co v. Heil (In re Heil),* 289 B.R. 897, 903

(Bankr. E.D. Tenn. 2003). "Revocation of a debtor's discharge is an extraordinary remedy, so § 727(d) is liberally construed in favor of the debtor and strictly construed against the party seeking revocation." *Heil,* 289 B.R. at 903.

Revocation requires a plaintiff to prove that defendants obtained their discharge by fraud and that plaintiff did not know of such fraud until after the discharge had been granted. *Humphreys v. Stedham (In re Stedham)*, 327 B.R. 889, 897 (Bankr. W.D. Tenn. 2005). Section 727(d)(1) provides that "[o]n the request of the trustee, a creditor or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if – such discharge was obtained though the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." 11 U.S.C.§ 727(d)(1).

In order for the Plaintiff's motion to be granted, he must show that there is no genuine issue of fact for trial as to both elements: 1) there was fraud committed by the Debtors in obtaining their discharge and 2) he did not know of this fraud before the discharge was entered. In order for the Defendants' motion to be granted, they must show that there is no genuine issue of fact for trial on either 1) that they did not commit fraud in connection with obtaining their discharge or 2) that, assuming they did commit fraud, the Plaintiff knew of the facts that would have provided him with a basis to object to the Defendants' entire discharge before the discharge was entered.

While the Plaintiff must prove both elements are not genuinely disputed, the Defendant must only show that there is no dispute as to one element in their favor.

C. Existence of Issues Related to Whether Debtor Committed Fraud in Obtaining the Discharge.

Under § 727(d)(1), it is the debtor's fraud in obtaining the discharge that qualifies as grounds for revocation and not the debtor's fraud vis-a-vis the creditor. *Yoppolo v. Sayre (In re Sayre),* 321 B.R. 424, 427 (Bankr. N.D. Ohio 2004) (". . . [Section] 727(d)(1) contemplates the type of fraud that . . . would have prevented the debtor from receiving a discharge in the first place."); *Lawrence Nat'l. Bank v. Edmonds (In re Edmonds),* 924 F.2d 176, 180 (10th Cir. 1991); *First Nat'l Bank of Harrisburg v. Jones (In re Jones),* 71 B.R. 682, 684 (S.D. Ill. 1987); *Tighe v. Valencia (In re Guadarrama),* 284 B.R. 463, 469 (Bankr. C.D. Cal. 2002); *Bowman v. Belt Valley Bank (In re Bowman),* 173 B.R. 922, 925 (9th Cir. B.A.P. 1994). "'As a general rule, to obtain relief under § 727(d)(1), it is insufficient that a debtor's fraud rendered a particular debt nondischargeable; claimant must allege that the entire discharge would not have been granted but for debtor's fraud.'" *Buckeye Ret. Co., L.L.C. v. Heil (In re Heil)*, 289 B.R. 897, 903 (Bankr. E.D. Tenn. 2003) (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991)).

The types of fraud that would have prevented the Defendants from receiving a discharge in the first place are contained in section 727(a). The list of actions that will prevent a debtor from receiving a discharge include: transferring property within one year of the bankruptcy with the intent to hinder, delay, or defraud a creditor; concealing, destroying, or falsifying records of the debtor's financial condition or business transactions; making a false oath; withholding recorded information; and failing to explain a loss of assets. 11 U.S.C. § 727(a)(2)-(5). These actions are different from the acts listed in section 523 which will result in the denial of the discharge of a particular debt. Most of the actions which Plaintiff describes in his complaint are

acts of prepetition fraud, false pretenses, larceny or embezzlement. These are not the types of conduct that will result in the denial of the entire discharge.

Plaintiff does raise one ground which qualifies. He relies on two misstatements in the schedules as examples of the Defendants intentionally and knowingly making false oaths to obtain their discharge. The first misstatement he alleges is that the Defendants mischaracterized him as a "creditor" in their Schedule F. The second is that the Defendants lied in their Statement of Financial Affairs about making any transfers to business creditors within the 90 days prior to filing.

The court finds that the first statement is not a false oath as a matter of law. Plaintiff is a creditor and the amount listed reflects the significant amount of $400,000 owed to him. Plaintiff argues that listing him as a "creditor" and not by some other designation such as "fraud victim" was a false statement to the court about the nature of the debt, and one which misled the Plaintiff about his rights to recover his money. This is not a correct interpretation of his status as described by the schedules and this position is inconsistent with Plaintiff's action in filing this complaint. The term *creditor* is defined in the Bankruptcy Code as an entity that holds a claim against the debtor that arose at the time of or before the order for relief concerning the debtor. 11 U.S.C. § 101(10). A *claim* is defined as a right to payment, whether or not such right is reduced to judgment, liquidated , unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. 11 U.S.C. § 101(5)(A). The plaintiff in a revocation action must be the trustee or a "creditor." 11 U.S.C. § 727(d)(1). The gist of Plaintiff's statement of undisputed facts is that he has standing as a creditor to recover the money Mr. Maddox owes him for the cars Plaintiff financed or entrusted to Mr. Maddox for sale. There

is no genuine issue of fact about whether listing Plaintiff as a creditor was a false oath. It is a true and accurate statement.

Plaintiff confuses being the holder of a claim with being the holder of a nondischargeable debt. If all of Plaintiff's allegations were proven, then Plaintiff would have pleaded facts sufficient to support a claim that Mr. Maddox defrauded him of $392,530. The Bankruptcy Code gave Plaintiff a right to file an adversary proceeding to have this court determine whether Mr. Maddox obtained funds from him by fraud, false pretenses, embezzlement or theft under 11 U.S.C. §§ 523(a)(2) or (4). The rules also required him to bring that action within a specific period of time. Fed. R. Bankr. P. 4007(c). However, Plaintiff did not bring such an action and the prepetition actions are not a sufficient basis to revoke a discharge. *Buckeye Ret. Co., L.L.C. v. Heil (In re Heil)*, 289 B.R. 897, 903 (Bankr. E.D. Tenn. 2003).

The second misstatement on which Plaintiff relies to prove the existence of an intentional false oath involves the Defendants' failure to disclose prepetition payments to creditors. The parties agree that the statement "none" in response to question no. 3 on the Statement of Financial Affairs is false. They agree that, in fact, there were hundreds of payments to creditors, many of which exceeded the $6,255 threshold for disclosure. The court has held that failure to disclose preferences is a material misstatement that may give rise to a denial of a discharge. *Jahn v. Flemings (In re Flemings)*, 433 B.R. 230, 242 (Bankr. E.D. Tenn. 2010). The Plaintiff has shown that there is no genine issue of whether a false oath was made; however, Plaintiff must also show that there is no genuine issue about whether Defendants knowingly and with fraudulent intent made the false statement. The existence of intent is an issue that is not well suited for a motion for summary judgment because it requires the court to review circumstantial evidence and to evaluate the credibility of the evidence. *FIA Card Servs. N.A. v. Wagner(In re*

9

*Wagner)*, No. 10-36900, 2012 WL 6737830 at *5 (Bankr. N.D. Ohio 2012) ( "where a debtor's subjective intent is at issue, summary judgment is generally inappropriate unless all reasonable inferences defeat the claims of the opposing party"). Mr. Maddox denies he had such intent. He has filed an affidavit in support of his motion stating that the mistake was "inadvertent and without any fraudulent intent." [Doc. no. 37, Affidavit of John Maddox ¶ 4.] As unlikely as inadvertence may be for the omission of 267 payments which totaled in excess of $2,800,000, Defendants are entitled to have the facts viewed in the light most favorable to them. Defendants' counsel also argues that there was no benefit to Mr. Maddox in failing to disclose these transfers. The primary beneficiaries of such failures to disclose are usually the recipients of those payments who may face avoidance actions brought by a chapter 7 trustee. If they are family members or affiliates of the debtor, the court may infer a fraudulent intent that the debtor is hiding the transfers to protect those family members or to retain those funds in other entities in which the debtor has an interest. Payments to insiders is one of the badges of fraud. *In re Courtney*, 351 B.R. 491, 500 (Bankr. E.D. Tn. 2006). In this case, Plaintiff, who is not alleged to be a partner or relative of the Defendants, was the recipient of the largest number of payments made in the 90 day period. There is no other proof that the Defendants benefited by failing to disclose the transfers that would support the inference of fraud.

     Mr. Maddox's denial coupled with weak circumstantial evidence of intent leads the court to conclude that there is an issue of fact as to whether Defendants had the requisite fraudulent intent to commit fraud in obtaining their discharge. Therefore the Plaintiff's motion for summary judgment will be denied.

     Because the court has found that an issue of fact exists as to Defendants' intent, the court also finds that Defendants are not entitled to a summary judgment based on Plaintiff's failure to

prove the first element of his claim. The stipulated fact that Defendants failed to list on their schedules $2.8 million in payments made to creditors in the 90 days before filing bankruptcy is sufficient to call into question the Defendant's claim of inadvertance. As noted above this would be an issue of credibility for the court to determine at trial. Defendants' motion for summary judgment will also be denied unless there is no issue of fact with respect to the Plaintiff's knowledge of the fraud before the discharge.

### D. No Existence of Issues of Fact Regarding the Plaintiff's Knowledge of the Fraud before the Discharge Was Entered.

The second required element of a discharge revocation action is proof that Plaintiff did not have knowledge of the fraud. If Plaintiff was aware of the fraud prior to discharge, he may not seek to revoke it. *Id*. In *Stedham*, Judge Boswell elaborated on § 727(d)(1):

> In the case of *Mid-Tech Consulting, Inc. v. Swendra (In re Swendra),* the Eighth Circuit was faced with deciding the scope of the "did not know" requirement under § 727(d)(1). In that case, the debtors obtained a discharge on December 15, 1987. Sometime thereafter, one of their creditors in the chapter 7 case, Mid-Tech Consulting, filed a revocation complaint against the debtors under § 727(d)(1). In their complaint, Mid-Tech alleged that the debtors had fraudulently failed to list several assets on their bankruptcy schedules, most importantly a lake cabin. Mid-Tech admitted that they learned about the concealment during the pendency of the case, but did not obtain evidence of it until two days after the Swendras' discharge was granted. After conducting a hearing, the bankruptcy court found that Mid-Tech did have knowledge of the alleged omission prior to the granting of the Swendras' discharge and, based on that finding, dismissed Mid-Tech's complaint. The district court affirmed the dismissal and Mid-Tech appealed.
> On appeal, Mid-Tech alleged that a creditor must know all the facts that constitute the alleged fraud before dismissal under § 727(d)(1) is appropriate. The Swendras, on the other hand, alleged that dismissal under § 727(d)(1) is appropriate so long as the creditor knew facts that indicated a possible fraud prior to discharge. The 8th circuit agreed with the debtors and held "that dismissal of a § 727(d)(1) revocation action is proper where, before discharge, the creditor knows facts such that he or she is put on notice of a possible fraud." *Swendra,* 938 F.2d 885, 888 (8th Cir. 1991). In support of its finding that "the burden is on the creditor to investigate diligently any possibly fraudulent conduct before discharge," the *Swendra* court reasoned:

11

> By placing this burden on the creditor, we ensure that situations such as the one before us will be avoided in the future. In this case, Mid-Tech knew of the cabin and its omission from the bankruptcy schedules, before discharge. Instead of thoroughly investigating the status of the lake cabin and the Swendras' stock, and then promptly bringing any fraud to the bankruptcy court's attention, Mid-Tech waited until after discharge. In seeking to revoke the discharge in a separate proceeding when the matter could have been handled before discharge in the original bankruptcy case, Mid-Tech has squandered the resources of the parties and the courts.
>
> *Id.*
> The majority of courts faced with deciding the "did not know" requirement of § 727(d)(1) have agreed with the *Swendra* court and found that "the party seeking revocation of the discharge must not have known sufficient facts regarding the Debtor's actions and/or omissions 'such that [it was] put on notice of a possible fraud.'" *Heil*, 289 B.R. at 903 (citing *Swendra*, 938 F.2d at 888); *Anderson v. Vereen (In re Vereen),* 219 B.R. 691, 696 (Bankr. D.S.C. 1997) (". . . in a revocation action under § 727(d)(1), the plaintiff must show due diligence in investigating and responding to possible fraudulent conduct once he or she is aware of it or is in possession of facts such that a reasonable person in his or her position should have been aware of a possible fraud."); *Tighe v. Valencia (In re Guadarrama),* 284 B.R. 463, 477-78 (C.D. Cal. 2002) ("Discovery of fraud for purposes of § 727(d) occurs when one 'obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge.'" (citation omitted); *State Bank of Indiana v. Kaliana (In re Kaliana),* 202 B.R. 600, 604 (Bankr. N.D. Ill. 1996) (If the creditor could have known of the alleged fraud, it has an affirmative duty to so investigate before the discharge is granted or the court will dismiss the requested revocation."); *Wood v. Cochard (In re Cochard),* 177 B.R. 639, 643 (Bankr. E.D. Mo. 1995); *West Suburban Bank of Darien v. Arianoutsos (In re Arianoutsos),* 116 B.R. 116, 118-19 (Bankr. N.D. Ill. 1990); *Bear Stearns & Co. v. Stein (In re Stein),* 102 B.R. 363, 367-68 (Bankr. S.D.N.Y. 1989); *Citibank v. Emery (In re Emery),* 201 B.R. 37, 41 (E.D.N.Y. 1996); *Bowman v. Belt Valley Bank (In re Bowman),* 173 B.R. 922, 925 (9th Cir. BAP 1994).

*Id.* at 897-99.

In this case, the court has found the only false statement on which revocation could be based is the statement that there were no payments made to business creditors in excess of $6,255 in the 90 days prior to filing bankruptcy.

However, § 727(d)(1) requires that the creditor bringing the action have no knowledge of the fraud before the discharge was granted. Plaintiff attached to his motion for summary judgment an exhibit that details all of the alleged preferences which Defendants failed to disclose in their bankruptcy schedules. [Exhibit 10.] There are 237 alleged preferential payments made in the 90 days prior to filing for a total of $2.8 million. [*Id.*] While the Plaintiff may not have known about all 237, he knew about the 69 checks that were written to him. Those checks were for vehicles and totaled $1.3 million. [*Id.*] He would have known whether any of those checks exceeded the threshold amount for disclosure of $6,255. Since Plaintiff was the recipient of nearly half of the alleged preferences, the only way he can claim not to have known of the false statement in the bankruptcy filing is if he had been unaware of the bankruptcy. However, Plaintiff admits to being listed as a creditor (*Amended Complaint* at ¶ 19) and that he received a letter on February 24, 2015 which informed him of the bankruptcy (Plaintiff's Statement of Facts ¶ 6). He had filed a criminal complaint and the issue of the Defendant's fraudulent intent was raised by Mr. Maddox's attorney's denial that his client had such intent.

Defendants filed their statement of financial affairs on February 20, 2015. It stated that no payments totaling more than $600 were made on consumer debts during the 90 days prior to filing. It also stated that no payments totaling more than $6,255 were made on business debts during the 90 days prior to filing.

At oral arguments on the motions, the parties agreed that Plaintiff received 69 payments in the form of checks during this period and that those payments totaled $1,300,000. There is no genuine issue that Plaintiff knew that there were significant transfers paid to creditors during the 90 days prior to filing that should have been disclosed.

13

Receipt of that many transfers in that magnitude provided Plaintiff notice that the statement was not accurate and should have led him to investigate further whether Defendants were not disclosing other prepetition payments. He knew from the first day the bankruptcy was filed that there were payments that had been made. He knew that he had received bad checks and that there were other vehicles which he never received and for which he was not paid within the first month of the case. He went to the criminal authorities on the day Mr. Maddox's lawyer admitted that the Defendant had pledged the vehicles to another creditor and denied fraudulent intent.

The court does not find that there is any genuine issue of fact regarding the Plaintiff's actual knowledge of the facts which could have provided a basis for objection to the Defendants' discharge. Creditors with far less knowledge than Plaintiff had have been denied relief under § 727(d)(1). *See Stedham* 327 B.R. at 899. Because the Plaintiff cannot prove one of the required elements for revocation of a discharge, Defendants are entitled to have their motion for summary judgment granted and the adversary proceeding dismissed.

The court acknowledges that Plaintiff has lost a substantial sum, and the court does not intend by this opinion to sanction fraudulent conduct in any way or even make a finding of whether fraud was committed by Mr. Maddox prepetition that may be used in any criminal proceeding. That determination will be left to the state authorities in the exercise of their police powers. Plaintiff correctly argues that the fresh start provided by a discharge is intended for the "honest debtor."

To that end, the Bankruptcy Code provides creditors with a window of opportunity to pursue objections to discharge and to object to the dischargeability of debts. When those claims involve fraud, embezzlement and larceny, the Code places the burden on the creditor to file an

14

adversary proceeding to obtain a determination that its debt falls into such a nondischargeable category. 11 U.S.C. § 523(a)(2) or (4); Fed. R. Bankr. P. 4007(c). After that window of opportunity has closed, the Code places an additional burden on a party seeking to revoke a discharge to show that it had no knowledge of the acts which would have caused the debtor to lose his or her discharge. A creditor must pursue its claims of nondischargeability diligently; and if it needs more time to investigate, the creditor should alert the court of what facts it does know and seek an extension of time to do so. In the absence of an objection, the discharge is entered and the bankruptcy case moves to closing. The Code requires the showing that the creditor did not know of its objection to prompt creditors to come forward earlier in the case in order to prevent squandering the resources of the parties and the court. In this case, Plaintiff's failure to bring his knowledge of the false statements to the trustee's attention by a timely filing may have resulted in substantial preference recoveries for the estate having been lost. Plaintiff's failure to investigate the Debtor's intent related to what he knew were the Defendants' false statements or to ask the court to stay the entry of a discharge until the criminal process was completed within the window provided by the Code prevents him from now seeking revocation of the discharge after it has been entered.

### IV. Conclusion

Because there is no issue of fact that William Brothers had knowledge of the existence of false statements on the schedules of John and Janet Maddox before they received their discharge, he is unable to satisfy 11 U.S.C. § 727(d)(1). Therefore, Mr. and Mrs. Maddox are entitled to summary judgment and the adversary proceeding will be dismissed.

A separate order shall enter.

###